## Gibson *versus* Lenhart, Receiver.

1. A pledgee's title to negotiable bonds, he being the *bona fide* holder of them for value, is good against all the world.

2. Where one pledges negotiable bonds, as collateral security for a loan made to him by another, and deposits the same in bank for him, for which the bank issues a certificate of deposit to the pledgee, setting out the ownership of the bonds in the pledgee, the bank, in an action of replevin against it by the pledgee, is estopped from contradicting its certificate to the pledgee and setting up ownership in another, for the possession of the bank is the possession of the pledgee.

3. It is error to admit evidence of a prior pledge of the same negotiable bonds to another, in the absence of proof of any knowledge on part of the pledgee of the *mala fides* of the pledgor. The rights of the alleged prior pledgee he not being a party to the record, as against the subsequent pledgee cannot be adjudicated.

4. Gibson *v.* Lenhart, Receiver, 2 Out., 522, followed.

February 1st, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Crawford county :* Of July Term, No. 123.

Replevin for the following Shenango & Allegheny Railroad bonds, dated April 1, 1869, J. J. Shryock, president; G. H. McGibbon, secretary; H. Rawle, treasurer, with coupons: Nos. 698, $1,000; 504, $1,000; 121, $1,000; 991, $500; 931, $500; 925, $500; 1083, $500; 1087, $500; 1086, $500; 1084, $500; 1082, $500; 1081, $500; 989, $500; 987, $500; 988, $500, of the value of nine thousand dollars, brought by William Gibson against Joseph H. Lenhart, Receiver of the First National Bank of Meadville, Pa., April 13th, 1881.

Writ returned: served a true and attested copy of this writ April 15th, 1881, personally on J. H. Lenhart, Receiver, etc.; and May 7th, 1881, by virtue of the within writ to me directed, I have taken and returned to the within named Dr. William Gibson the within described Shenango & Allegheny Railroad bonds, as within I am commanded.

July 13th, 1881. The defendant pleads "*Non cepit in modo et forma,*" etc., "property," and "property *in alio.*"

On the trial before CHURCH, P. J., the following facts appeared: On the 20th day of April, 1878, William Thorp borrowed from the plaintiff, Dr. William Gibson, $6,674.40 for one year, and agreed that within ten days thereafter he would deposit with the First National Bank, of Meadville, Pa., the corporation defendant, $9,000 Shenango & Allegheny Railroad bonds as collateral therefor. The note which he gave read as follows:

"JAMESTOWN, PA., April 20th, 1878.

" I have this day borrowed from Dr. Wm. Gibson, and given him my note, payable in one year from date, the sum of $6,674.40, due in one year, for which I am to deposit in the First National Bank, of Meadville, $9,000 Shenango & Allegheny Railroad bonds as collateral security for the payment of said note, and send him a certificate of said deposit within ten days from this date.

"Signed,                         "WILLIAM THORP."

On the third day of May, 1878, the plaintiff received the certificate of deposit, which reads thus:

"No. 115.

" C. A. DERICKSON, President.   WILLIAM THORP, Vice-President.   R. W. DERICKSON, Cashier.

"FIRST NATIONAL BANK OF MEADVILLE,
     "MEADVILLE, PA., May 3d, 1878.

" Dr. William Gibson, Jamestown, Pa. :

"DEAR SIR : William Thorp has this day deposited in this bank $9,000 in bonds of the Shenango & Allegheny Railroad Company, to be held as security for the payment to you of his note for $6,674.40, dated April 20th, 1878, due in one year from that date.  William Thorp has reserved the right of taking the coupons from the above mentioned bonds as they become due.            " Yours truly,

" Signed,                         " W. R. DERICKSON."

William Thorp failed on November 12th, 1878.

The next day afterwards the plaintiff called at the bank of the corporation defendant, and was informed by the president, C. A. Derickson, with whom were William Thorp, vice-president, and R. W. Derickson, cashier, that his bonds were in the bank's vault, and he would give them to him if he would give them the certificate.  William Thorp continued to act, and was vice-president from the time of the loan to him from Dr. Gibson until just after his failure, when one A. S. Dickson was chosen vice-president.

A short time subsequently he called again, and, upon asking for his bonds, was handed by the president, C. A. Derickson, an envelope on which was indorsed "Dr. William Gibson, $9,000 bonds Shenango & Allegheny Railroad Company," and was informed he could take them away.  Gibson took the bonds out of the package to examine them and see whether Thorp had cut off more coupons than he was entitled to, and found he had not, and putting them back into the envelope, handed the package back to the president of the bank, not

1 AMERMAN—40

having the certificate of deposit with him, he (Gibson) having mislaid it.

About a week or so afterwards C. A. Derickson, the president of the bank, sent a letter dated March 29th, 1880, which read thus:

" C. A. DERICKSON, President.   A. S. DICKSON, Vice-President.   R. W. DERICKSON, Cashier.

"FIRST NATIONAL BANK OF MEADVILLE, <br>"MEADVILLE, PA., March 29th, 1880.

" *Dr. William Gibson, Jamestown, Pa. :*

"DEAR SIR: If you wish I will cut off the April interest of the $9,000 S. & A. bonds held by the bank for you on account of the Thorp loan.  If you prefer to collect the interest yourself, please address me to that effect to-morrow morning by wire, otherwise, I will cut them off, etc.

" When paid the bank will credit you the amount without charge.

" When you come in bring with you the paper you hold from the bank showing that the bonds were deposited for you by Thorp, and for what purpose.

"Signed,          C. A. DERICKSON, President."

These coupons to the amount of $315 were collected by the bank, and the money, tied up in a paper, indorsed and put in the envelope with the bonds.

Subsequently, on the 3d day of June, 1880, the bank failed, and by the Comptroller of the Currency a Mr. Young was appointed temporary Receiver, and he took possession of the bank and its effects.

Afterwards, and while Mr. Young was in possession, he notified Dr. Wm. Gibson to call upon him with reference to his bonds, which Gibson did, and Mr. Young took the same package of bonds from the bank and handed them to Mr. Gibson.  Dr. Gibson took out the bonds and found with them the $315 in money, which Mr. Young then gave to Dr. Wm. Gibson, it being the amount of the April, 1880, coupons, which had been cut off.  Mr. Young tendered the bonds to Dr. Gibson, and told him to take them and give him the certificate of deposit, as he wanted the certificate or voucher.  Mr. Gibson not having the certificate, not having yet found it, handed the bonds back to Receiver Young.

Joseph H. Lenhart was appointed Receiver of the bank, and took possession on the 30th of June, 1880, who, after taking possession, found the package of bonds marked Dr. Wm. Gibson, S. & A. bonds $9,000, containing the identical bonds in controversy, and the same replevied by Gibson.

After the writ of replevin was issued, plaintiff, Wm. Gibson, found the certificate of deposit, which had been mislaid.

[Gibson v. Lenhart.]

The defendant resists the claim of the plaintiff to $6,500 of the bonds replevied by Dr. William Gibson, and attempts to set up a title to them in one George Berringer, and, under objection and exception, sought to show by the testimony of Wm. Reynolds, David Berringer and William Thorp, that on or about the 21st day of September, 1877, William Reynolds and William Thorp had obtained a loan from George Berringer of $15,000, and that some $20,000 Shenango & Allegheny Railroad bonds had been hypothecated to Berringer as collateral security, and under objection and exception, a paper of hypothecation signed by Wm. Reynolds and Wm. Thorp, dated 21st of September, 1877, was put in evidence. This paper stated that $12,000 of the bonds belonged to William Reynolds and $8,000 to William Thorp. A part of the bonds thus hypothecated by Thorp to George Berringer to the extent of $6,500, correspond in number with those found in the package marked Dr. William Gibson, and replevied by him.

Under objection and exception a receipt referring to said contract signed by R. W. Derickson, cashier First National Bank, of Meadville, was also put in evidence.

From the time of the loan in September, 1877, by Beringer to Reynolds and Thorp until after the failure of Thorp, so far as the evidence shows, there was nothing in the First National Bank of Meadville to show that Berringer had any claim to any bonds in the bank ; and the paper called contract of hypothecation of bonds to Berringer was not in the Berringer package, or any other, and was not produced until after the failure of the bank, and was then produced by William Thorp.

The defendant in nine separate offers offered an agreement between Reynolds and Thorp and Berringer the certificate of deposit of the bank and the negotiations and understanding of the parties in reference thereto. These offers were objected to on the ground of their being irrelevant and incompetent to affect the rights of Gibson. The evidence was admitted, and exceptions noted by the plaintiff. (First nine assignments of error.) The following are the agreement and certificate of deposit admitted in evidence :

Whereas, William Reynolds and William Thorp have this day borrowed from George Berringer, of Clinton township, Venango County, Pa., the sum of fifteen thousand dollars, for the term of two years from this date, with the privilege of an extension of time, at the option of the borrowers, of two years in addition, for which sum William Reynolds and William Thorp have given their notes. Now, for the collateral security of the principal and interest of said note, the said parties do agree, and do hereby deposit with the First National Bank of

[Gibson *v.* Lenhart.]

Meadville, twenty thousand dollars of Shenango & Allegheny Railroad bonds, to be held by said bank as collateral security for the payment of said loan and interest in full, according to the terms of the said note.   The said Reynolds and Thorp to have the right to receive from the said bank the several coupons of said bonds as they shall fall due, unless in case of default in the payment of interest or principal, in which case the said privilege shall be forfeited, and in case of default in payment of said principal sum within thirty days after the same becomes due, the said First National Bank is hereby authorized to sell or dispose of said bonds at their market value, and liquidate the amount of said note out of the proceeds thereof.

Witness our hands and seals this twenty-first day of September, 1877.                    WM. REYNOLDS.   [SEAL.]
     (Signed).                    WM. THORP.       [SEAL.]

## CERTIFICATE OF DEPOSIT.

Received, September 21st, 1877, of Wm. Thorp, the following bonds:   Nos. 121 and 504, of one thousand dollars each ; also Nos. 987, 989, 994, 988, 1081, 1087, 1084, 1082, 1088, 1086, 1085, and 1083, of five hundred dollars each, of the Shenango & Allegheny Railroad bonds; also received of William Reynolds twelve bonds of one thousand dollars each of Shenango & Allegheny Railroad bonds, to be held by us in accordance with the terms of the deposit and trust hereto annexed—said bonds of Mr. Reynolds are Nos. 420, 701, 702, 125, 127, 126, 135, 703, 144, 362, 418, 419.
     (Signed)                    R. W. DERICKSON,
                    Cashier First Nat. Bank, Meadville.

The plaintiff presented, *inter alia*, the following point :
4. That the bonds in controversy are negotiable securities, and if they were negotiated to the plaintiff for a loan of money made by him to Thorp at the time, and that he had no knowledge that any other than Thorp claimed property in them, then he is a *bona fide* holder for value in the usual course of business, and the verdict should be for the plaintiff.

Answer—This point is affirmed, but there is evidence that $6,500 of the bonds were not negotiated to the plaintiff for the Thorp loan, if the evidence of Mr. Thorp is believed, and you will note whether there is any evidence contradictory to Mr. Thorp's evidence upon that point.   (Tenth assignment of error.).

In the general charge the court instructed the jury, *inter alia* : This is an action of replevin, and the plaintiff being the actor in a replevin suit, must show his title to these bonds.

[Gibson *v.* Lenhart.]

He must show to the satisfaction of the jury how he became possessed of them, and why he claims them. He has introduced evidence to this effect: that on April 20th, 1878, he loaned William Thorp $6.600. upon an agreement that when he left the presence of Dr. Gibson, he would in a few days deposit in the First National Bank of Meadville $9,000 of Shenango & Allegheny Railroad bonds. You will bear in mind that when this loan was made and note given to Dr. Gibson by William Thorp, it was done in Mercer County, and according to the statement of Dr. Gibson, Mr. Thorp was to deposit $9,000 in the First National Bank of Meadville. Bear in mind that no specification of bonds or number was made at that time. The 3d of May, afterwards. Dr. Gibson received a letter wherein the cashier told him, certified to him, that Mr. Thorp, in obedience to their former agreement, had deposited in the bank $9,000. In that letter no other description is given by the depositee. Up to this time Dr. Gibson had not seen any bond, or known anything about their number or their value. Thus matters rested until after Mr. Thorp failed in 1879, [when Dr. Gibson comes to the depositee, namely, this bank, to find out about his bonds. He finds a package which purports to be bonds, upon which his name is endorsed. It is not given to him, because he has not this letter or certificate of deposit sent by the bank. He does not get possession of these bonds until he gets possession by the sheriff in the bringing of this suit. To be sure, at one time in the bank, in April, 1880, the examiner is understood as handing him the bonds, but he did not take possession, and not until April, 1880, did he even know the number of the bonds; at all events, he did not take the numbers of the bonds until after that time, after the bank had been in the hands of a provisional receiver.] (Twelfth assignment of error.)

[He claims those bonds which he found in that package when Mr. Young was provisional receiver, and the bonds which he looked over when he took the numbers, just prior to bringing the action of replevin, as the same bonds which Mr. Thorp put into possession of the bank as collateral security for the $6,600 loan. Is there any evidence of that?] (Thirteenth assignment of error.)

You will determine this case under the evidence. [Mr. Thorp, now deceased, the only human being who had any knowledge, and whose testimony was read in your hearing, says the bonds for which this suit was brought, $6,500 of the bonds, are the same that were pledged to another person (the real defendant in this case), one Berringer.] (Fourteenth assignment of error.)

[Gibson *v.* Lenhart.]

[That the $6,500 of bonds theretofore pledged by Thorp to Berringer were not given by him to the cashier to be pledged to Dr. Gibson.] (Fifteenth assignment of error.)

[If Mr. Thorp is telling the truth, and there is no evidence to contradict it, then it would seem that $6,500 of these bonds about which the contention is now, were not placed at the time of the loan to Dr. Gibson, or immediately thereafter, on the 3d of May, 1878, in pledge to Dr. Gibson by Thorp. It is a question of fact, pure and simple. No question of law about it whatever.] (Sixteenth assignment of error.)

[You will perceive that I have answered all the points of the plaintiff in the affirmative.] (Eleventh assignment of error.)

[These $6,500 of bonds were in justice and good faith, certainly, and if I might say so, in better faith pledged to Berringer by Thorp some six months before they were pledged to Dr. Gibson. I would not say in better faith, legally speaking, but all parties to the pledge were present, the pledgors, Mr. Thorp and Mr. Reynolds, the pledgee, namely, Mr. Berringer, and the depositee, the bank officers, were present. The bonds were counted, numbered, described, receipts given specifying and defining the bonds to be received and placed to the credit of the pledgee, Berringer.] (Seventeenth assignment of error.)

[According to the testimony of Mr. Thorp these numbers, read over in your hearing, amounting to $6,500, were pledged in 1877 (some six months prior to the Thorp and Gibson transaction) to Berringer, and if the evidence is to be believed, those bonds pledged to Berringer, $6,500 of which are involved in this suit, were not pledged to Dr. Gibson at the time the certificate of deposit was written by Mr. Derickson, nor do we know when they came into the possession of the envelope handed by Mr. Young to Dr. Gibson.] (Eighteenth assignment of error.)

I hope you understand the facts in this transaction. You determine this case on the legal evidence and the law; the law as you derive it from the Court, and the evidence as it falls from the lips of the witnesses. [There can be no doubt that $6,500 of these bonds were pledged to Berringer in 1877, as described by Mr. Thorp, Mr. Reynolds, and Mr. Berringer. The $6,500 has got into the package of this plaintiff. Has he shown title under the law and the evidence as laid down?] If so, find for him. If not, find for the defendant. (Nineteenth assignment of error.)

Verdict for the plaintiff for Shenango & Allegheny Railroad bonds Nos. 925, 991 and 931 of $500 each, and No. 698 of $1,000; and for defendant for bonds Nos. 121 and 504 of

$1,000 each, and Nos. 987, 988, 989, 1081, 1082, 1083, 1084, 1086 and 1087 of $500 each, the latter to be returned to the defendant and judgment thereon.

The plaintiff thereupon took this writ assigning for error the admission of evidence, the answer to his fourth point, and those portions of the general charge included within brackets, as above set out.

*Thomas Roddy* (*H. L. Richmond* with him), for plaintiff in error.—1. The admission of the Berringer papers, made long prior to the hypothecation of the bonds to Gibson (Berringer not being a party defendant), and Gibson not having notice at the time of any *mala fides* on the part of Thorp, it is claimed was erroneous, and should not have been admitted. They were not part of the *res gestœ*, and of themselves insufficient to defeat or in any way affect the right of the plaintiff to the possession of the bonds under his certificate of May 3d, 1878, at the time of his instituting this action.

2. The defendant, by virtue of his special plea filed in this case, cannot be permitted to controvert its own certificate and say that after it had received the bonds of plaintiff, it allowed some unknown person to change them. The plea is *non cepit in modo et forma*, and property in *alio* may be pleaded, but such plea must be sustained by indisputable evidence. The defendant interposing it must connect himself satisfactorily therewith or the verdict should be against him, and hence it was error to admit the testimony of Wm. Thorp and others to controvert the bank's own certificate that it had received the bonds on special deposit, supplemented as it was by the fact that the amount of bonds corresponding in amount, and indorsed with the name of Dr. Wm. Gibson, were found in its vaults. As between Mr. Gibson and the bank it mattered not whether these very bonds had been formerly hypothecated to Berringer, or whether Mr. Thorp had other bonds at the time of the Gibson loan. The fact that Mr. Gibson was the *bona fide* purchaser for value of $9,000 Shenango & Allegheny Railroad bonds, without notice of any *mala fides*, on May 23d, 1878, entitled him to hold them against any other person. The possession of the bank was his possession. This was settled by the court in the case of Gibson *v.* Lenhart, 5 Out., 522, and the admission of all evidence to the contrary by the learned court below is claimed to be error.

*John J. Henderson* for defendant in error.—The plaintiff could not recover unless he could satisfy the jury that these particular bonds were pledged to him at the time he was notified that Thorp had deposited the bonds for his security.

This question was fully submitted to the jury by the court on the trial.

There can be no serious question as to the right of the bank to defend this action by showing that the $6,500 of bonds were not pledged by Thorp to plaintiff.

In doing this it was proper to show that the bonds were pledged to Berringer, that they came into the bank in that way, and to prove by the owner of them that they were not twice pledged. The question is not whether any bonds were pledged to plaintiff, or whether he has a right of action against the bank, but whether these particular bonds were pledged as his security, as provided for in his agreement with Thorp. The defendant proved satisfactorily that these bonds were not pledged to plaintiff, and he therefore never had title to them.

In an action of replevin evidence that another owns the property or has a right superior to the plaintiff will defeat his action: Seibert *v.* McHenry, 6 W., 303; Quincy *v.* Hall, 1 Pick., 360. The charge of the court is to be considered as a whole, not judged by fragments separated from the context. It contains no statement not justified by the facts, and does not assume to control the action of the jury. On the contrary, the jury is instructed to find for the plaintiff or for the defendant according to the evidence.

" It is not error for the court to comment on the evidence; nor to express an opinion on the weight thereof, if the facts are left to the jury": Bonner *v.* Herrick, 3 Out., 220.

Mr. Justice Paxson delivered the opinion of the court March 15th, 1886.

It was held when this case was here upon a former writ of error (Gibson *v.* Lenhart, 101 Penn. St., Rep. 522) that the plaintiff was a *bonâ fide* holder for value of the $9,000 of bonds of the Shenango & Allegheny Railroad Company in controversy, and that the possession of the bank was his possession; in other words, that the delivery of the bonds to the bank for the plaintiff was a delivery to him, as the bonds were negotiable and passed by delivery, it would seem clear that the plaintiff's title thereto was good against all the world. That his case miscarried in the court below was manifestly due to errors upon the trial.

The defendant was the bank having custody of the bonds, or, to speak accurately, the receiver appointed by the government to take charge of the assets of the bank after its failure. We have the admission of the bank in the shape of its certificate, signed by its duly constituted officers, that they held for account of the plaintiff $9,000 of the bonds of this company. It also appeared that said bonds were in an envelope with the plain-

[Gibson v. Lenhart.]

tiff's name indorsed thereon; that upon one occasion the coupons were cut off by a bank officer and the proceeds ($315) placed back in the envelope, which sum the receiver afterwards paid to the plaintiff.   The defence now set up is that a portion of these bonds had been previously pledged by Thorp to one Berringer as security for a loan made by the latter to Thorp and Reynolds, and a considerable amount of evidence was received under objection to prove this fact.   We are of opinion that all this evidence should have been excluded. There was neither allegation nor proof of any *mala fides* on the part of the plaintiff; nor that he had any knowledge of such pledge when he made his loan upon the faith of the bonds.   Under such circumstances his title was good, and it will not do for the bank now to set up that the bonds in the package are not the original bonds pledged to the plaintiff. If they are the same bonds the plaintiff is entitled to recover, and the bank is estopped from alleging that they have been changed in the bundles.   We are of opinion that all of the evidence referred to in the first nine specifications of error should have been excluded.

The plaintiff's fourth point should have been affirmed without qualification.   There was also plain error in that portion of the charge embraced in the twelfth assignment, in which the learned judge instructed the jury that the plaintiff never had the possession of the bonds until they were delivered to him by the sheriff upon the writ of replevin.   On the contrary, he had the legal possession of them all the time after they had been delivered to the bank, for the possession of the bank was his possession.   So much was distinctly said in 101 Penn. St. Rep., at page 529.   The remaining assignments of error relate to portions of the charge referring to the evidence alluded to.   As all this will be excluded on the next trial, a further discussion of it is unnecessary.

We do not pass upon Beringer's rights.   He is no party to this record, and the judgment does not bind him.   It is a question now between the plaintiff and the bank.

Judgment reversed, and a *venire facias de novo* awarded.